## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

RESIDENTIAL ENERGY SERVICES
NETWORK, INC., a California corporation,

     Plaintiff,      CASE NO.

  v.

WALKER REID STRATEGIES, INC.,
a Florida corporation, and JOHN J. SCHULTZ,
individually,

     Defendants.

_____/

## COMPLAINT

Plaintiff, RESIDENTIAL ENERGY SERVICES NETWORK, Inc. ("RESNET"), a California corporation, hereby files this complaint against Defendants, WALKER REID STRATEGIES, INC., a Florida corporation, ("WRS") and JOHN J. SCHULTZ ("SCHULTZ") (collectively "Defendants" or "WRS"), and states:

## NATURE OF THE ACTION

1. This is an action for false designation of origin and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); the United States Copyright Act of 1976, as amended (17 U.S.C. §§ 101 *et seq.*); and other Federal

and causes of action under the laws of the State of Florida, for damages and injunctive relief.

## THE PARTIES

2.     RESNET is a California Corporation doing business in the State of Florida that owns the intellectual property at issue.

3.     WFS is a corporation organized under the laws of the State of Florida and maintaining a principal place of business in Boca Raton, Florida.

4.     Schulz, is an individual, who, upon information and belief, resides at 2116 Ironwood Avenue, Stevens Point, WI 54482 who has and is conducting business in Florida.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to, *inter alia*, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a trademark dispute that arises under the federal Lanham Act, 15 U.S.C. § 1051 *et seq*.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the acts or omissions giving rise to this claim occurred, in this judicial district.

## BACKGROUND

7.     The Residential Energy Services Network ("RESNET") was founded in 1995 as an independent, non-profit organization to help homeowners reduce the cost of their utility bills by making their homes more energy efficient.

8.     In 2002, RESNET became incorporated as a 501 (c) (3) non-profit organization and Energy Rated Homes of America was merged into the organization, with a Board of Directors governing RESNET.

9.     After more than a decade of development, the infrastructure needed to make energy efficiency a standard feature in the nation's housing market is now in place. Across the nation, rating programs, in partnership with the housing industry, are forging the public and private partnerships required for successful home energy rating systems. The technical, program and marketing assistance required for this effort is provided by RESNET.

10.     The Home Energy Rating System ("HERS") Index is the industry standard by which a home's energy efficiency is measured. It is also the nationally recognized system for inspecting and calculating a home's energy performance.

11.     The HERS Index measures a home's energy efficiency and can calculate other outputs and suggestions, such as how efficiently a home is operating and which modifications can be made for greater energy savings. When selling a home, a low HERS Index Score can command a higher resale price; when

3

purchasing a home, the HERS Index Score can be used to anticipate the costs of energy bills and weigh whether efficiency upgrades are needed.

12.     On December 6, 2004, RESNET filed for a trademark on "RESNET RESIDENTIAL ENERGY SERVICES NETWORK," Reg. No.  3170404, Serial No. 76623423.

13.     On January 3, 2007, RESNET filed for a trademark on "HERS," Reg. No. 3322697, Serial No. 77075107.

14.     January 3, 2007, RESNET filed for a trademark on "RESNET," Reg. No. 3316047.

15.     On November 30, 2017, RESNET filed for a trademark for "RESNET HERS H20," Serial No. 87703439.

16.     On May 3, 2018, RESNET obtained a copyright registration, Reg. No. TX0008577199, for the "Standard for the Calculation and Labeling of the Energy Performance of Low-Rise Residential Buildings using an Energy Rating Index." RESNET's trademarks and copyright are collectively referred to as its "Intellectual Property."

17.     On November 7, 2016 Mr.  Shultz certification as a HERS Rater was revoked. On December 1, 2016 RESNET revoked John Schultz company Heartland Energy Rater, LLC's accreditation as a Rating Provider.  As such, upon these

revocations, Schultz was no longer has authorization to use the HERS trade mark, or any Resnet Intellectual Property.

18.     Despite the revocations, Schultz continues to represent that he is a certified RESNET HERS rater that is authorized to certifies buildings for the 2005 Federal Energy Policy Act (EPAct 2005) for energy efficient buildings.

19.     In fact, on August 2, 2021, Schultz as the Certifier, and Walker Reid issued a fraudulent compliance reports for the federal 45L tax credit stating that the home was HERS Rated, that it was a confirmed rating, the date of the rating, the RESNET Rater ID number and the RESNET Registry ID. A copy of the report is attached hereto as Exhibit "1."

# 2005 EPACT Energy Efficient Home Tax Credit ( 13-001 )

**Property**
Legend Oaks Partners, LLC
42 N. Flanders St.
Chapel Hill, NC 27517

Weather:Raleigh, NC
Robuck Homes
42 N. Flanders St.
Chapel Hill, NC 27517.blg

**Organization**
Walker Reid Strategies
800-662-1793
John Schultz

**Builder**

**HERS**
Confirmed
7/21/2021
Rater ID:6489485
Registry ID: 273171873

20.     Under the penalty of perjury Schultz and WRS are intentionally and fraudulently misleading third parties:

This home MEETS the requirements for the residential energy efficiency tax credits under Section 1332, Credit for Construction of New Energy Efficient Homes, of the Energy Policy Act of 2005 extended to December 31, 2020.

As demonstrated above, this dwelling unit has a projected level of annual heating and cooling energy consumption that is at least 50% below the annual level of heating cooling energy consumption of a 2006 IECC reference dwelling in the same climate zone, and the building envelope components improvements alone account for at least 10% of those savings. The projected heating and cooling energy savings above have been calculated in the manner prescribed in Appendix A of the RESNET Publication No. 13-001. Field inspections of the dwelling unit performed by the undersigned eligible certifier during and after the completion of construction have confirmed that all features of the home affecting such heating and cooling energy consumption comply with the design specifications provided to the undersigned certifier.

Under penalties of perjury, I declare that I have examined this certification, including accompanying documents, and to the best of my knowledge and belief, the facts presented in support of this certification are true, correct, and complete.

Name  John Schultz                                          Date  2020-08-25
Company  Walker Reid Strategies
Address  1225 Broken Sound Pkwy NW, Ste C, Boca Raton, FL 33487      Signature

21.    Schultz and WRS are fraudulently conducting business using a certification that they are not entitled to use.

22.    Schultz continues to team up various accounting firms to prepare and issue fraudulent compliance reports claiming that Schultz is a certified RESNET HERS rater and that he and the accounting firms are authorized to issue such findings and reports.

23.    At all times in questions, Schultz fraudulently held and continues to hold himself out as a HERS certified energy rater.

24.    At all times in questions, WRS fraudulently held and continues to hold itself out as being authorized to issue certifications containing HERS certifications and ratings.

25.    On September 8, 2021, RESNET sent Defendants a cease and desist demand and notified them of their continued fraud, trademark and copyright infringement. A copy of the notice is attached hereto as Exhibit "2."

6

26.     Schultz and WRS are using RESNET's copyrighted material and trademarks to deceptively and unfairly compete with RESNET and to confuse the public.

27.     Schultz and WRS are tarnishing the Intellectual Property and the RESNET brand.

28.     Schultz and WRS's representations and certifications are without RESNET's permission, and is a misappropriation and infringement of RESNET's Intellectual Property and damages RESNET and the RESNET brand.

29.     Schultz and WRS have misappropriated RESNET's Intellectual Property to the detriment of the RESNET and the benefit of Schultz and WRS.

30.     RESNET has not licensed, or gave exclusive permission, to Schultz or WRS to use any of RESNET's Intellectual Property.

31.     Schultz and WRS do not a have license, authority, or other permission from RESNET to use any of RESNET's Intellectual Property.

32.     Schultz and WRS's continued use of RESNET's Intellectual Property is: (a) damaging RESNET's Intellectual Property; (b) damaging the RESNET brand; and (c) causing confusion in the marketplace.

33.     The forgoing acts of Defendants constitutes direct copyright and trademark infringement in violation of federal law.

34.     The foregoing acts of Schultz and WRS are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that they are associated with Resnet and authorized to use RESNET's Intellectual Property.

35.     RESNET, through its licensed raters, enter into agreements to issue Section 45L Certification Reports.

36.     RESNET has certified raters who enters into contracts throughout the United States, specifically including Florida, with builders in order to issue a Section 45L Certification Report.

37.     Schultz and WRS are aware, or should have been aware, that Schultz is not a certified RESNET HERS rater.

38.     Schultz and WRSO specifically intended to interfere with Plaintiff's business relationships and prospective relationships.

39.     The activities of Schultz and WRS, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between Schultz and WRS, and RESNET.

<u>COUNT I</u>
# FEDERAL TRADEMARK INFRINGEMENT/FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. §1125(a)
**(Schultz and WRS)**

40.     RESNET incorporates the allegations of the Paragraphs 1 through 393 as if fully set forth herein.

41.     By *inter alia*, circulating materials that falsely state Defendants remain accredited by RESNET and affiliated with RESNET directing potential customers to Schultz and WRS's advertisements under this pretext, Schultz and WRS have falsely designated and represented that it or its agents are Certified and a RESNET HERS® Rater who is endorsed by, connected with, authorized by, or otherwise associated with RESNET, who owns federal registrations for its Intellectual Property.

42.     Schultz and WRS have used and continues to use RESNET's Intellectual Property.

43.     Schultz and WRS have improperly used, and continues to use, RESNET trademarks and copyright in connection with the same services, which is likely to cause confusion or mistake, or to deceive as to affiliation, connection, or association of Schultz and WRS with RESNET, or as to the origin, sponsorship, or approval of their goods and/or services.

44.     Schultz and WRS's acts have damaged or are likely to damage goodwill associated with RESNET, the Intellectual Property, and the RESNET brand.

45.     Schultz and WRS's acts have been willful, intentional, and intended to benefit Schultz and WRS at RESNET's expense.

46.     Schultz and WRS's actions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Schultz and WRS's actions have directly and proximately caused, and will continue to cause, irreparable harm to RESNET, unless preliminarily and permanently enjoined.

48.     RESNET does not have an adequate remedy at law.

49.     Furthermore, Schultz and WRS are realizing profit and will continue to realize a profit from its unlawful actions, which are causing, and will cause, RESNET monetary damage in an amount to be determined at trial.

WHEREFORE, RESNET prays that the Court grant the Prayer for Relief set forth below.

## COUNT II
## FEDERAL UNFAIR COMPETITION - 15 U.S.C. § 1125(a)
### (Schultz and WRS)

50.     RESNET incorporate the allegations of the Paragraphs 1 through 39 as if fully set forth herein.

51.     RESNET has specifically directed Schultz and WRS to not use RESNET's Intellectual Property, ideas, programs, or customers in any manner.

52.     Schultz and WRS willfully, intentionally, and deliberately stole RESNET's ideas, programs, customers and Intellectual Property in derogation of RESNET's rights.

53.     Schultz and WRS's use of RESNET's intellectual property, including trademark, copyrights, programs and concepts in commerce is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association; and/or likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of Schultz and WRS's services and affiliations, and thus, constitutes unfair competition, false designation of origin, and/or false description or representation in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

54.     Schultz and WRS's actions have directly and proximately caused, and will continue to cause, irreparable harm to RESNET, unless preliminarily and permanently enjoined.

55.     RESNET does not have adequate remedy at law.

56.     Furthermore, Schultz and WRS are realizing profit and will continue to realize a profit from its unlawful actions, which are causing, and will cause, RESNET monetary damage in an amount to be determined at trial.

WHEREFORE, RESNET prays that the Court grant the Prayer for Relief set forth below.

## COUNT III
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT PURSUANT TO FLA. STAT. CH. 501
### (Schultz and WRS)

57.     RESNET re-alleges and re-incorporates the allegations in paragraphs 1 through 39 as though fully set forth herein.

58.     RESNET has not authorized Schultz or WRS to use RESNET's Intellectual Property, ideas, programs, or customers in any manner.

59.     Schultz and WRS's involvement in the fraudulent scheme to steal the RESNET's rights, title, and interest in its Intellectual Property, customers, good will and business reputation, as well as its unlawful and unauthorized use of the RESNET's Intellectual Property, constitutes unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of any trade or commerce violative of *Florida Statutes Chapter 501*.

60.     Schultz and WRS's fraudulent misrepresentation, omission, and concealment of their involvement in the fraudulent scheme constitutes unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of any trade or commerce violative of *Florida Statutes Chapter 501*.

61.     The conduct described above offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious.

62.     Schultz and WRS's actions have directly and proximately caused, and will continue to cause, RESNET to, and continues to, suffer damages, including but not limited to economic losses, damages to goodwill, and attorneys' fees in connection with this litigation.

WHEREFORE, RESNET prays that the Court grant the Prayer for Relief set forth below.

**COUNT IV**
**UNFAIR COMPETITION UNDER FLORIDA LAW**
**(Schultz and WRS)**

63.     RESNET re-alleges and re-incorporates the allegations in paragraphs 1 through 39 as though fully set forth herein.

64.     RESNET has used and continue to use Intellectual Property in interstate commerce.

65.     Schultz and WRS's actions have been willful, deliberate, and intended to benefit WRS at RESNET's expense.

66.     Schultz and WRS's use of RESNET's Intellectual Property in commerce is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association; and/or likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of Schultz and WRS's services, and thus, constitute unfair competition, false designation of origin, and/or false description or representation.

67.     Schultz and WRS's actions have directly and proximately caused, and will continue to cause, irreparable harm to RESNET, unless preliminarily and permanently enjoined.

68.     RESNET has no adequate remedy at law.

69.     Furthermore, Schultz and WRS are realizing profit and will continue to realize a profit from its unlawful actions, which are causing, and will cause, RESNET monetary damage in an amount to be determined at trial.

WHEREFORE, RESNET prays that the Court grant the Prayer for Relief set forth below.

**COUNT V**
**Federal Trademark Infringement, 15 U.S.C. § 1114**
**(Schultz and WRS)**

70.     RESNET realleges and incorporates the foregoing paragraphs 1 through 39, as though fully set forth herein.

71.     Schultz and WRS's use of RESNET's trademarks is likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, or affiliation, connection, or association of Schultz and WRS's products and services with RESNET's, or as to the approval of Schultz and WRS's products or services by RESNET and thus constitutes infringement of RESNET's federally registered marks, in violation of the Lanham Act, 15 U.S.C. § 1114.

72.     Schultz and WRS's actions have been willful, deliberate, and intended to benefit Schultz and WRS at RESNET's expense.

73.     Schultz and WRS's actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

74.     Schultz and WRS's actions have directly and proximately caused, and will continue to cause, irreparable harm to RESNET, unless preliminarily and permanently enjoined.

75.     RESNET has no adequate remedy at law.

76.     Furthermore, Schultz and WRS are realizing profit and will continue to realize a profit from its unlawful actions, which are causing, and will cause, RESNET monetary damage in an amount to be determined at trial.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Schultz and WRS)

77.     RESNET realleges and incorporates the foregoing paragraphs 1 through 39, as though fully set forth herein.

78.     RESNET has beneficial and ongoing relationships with certified RESNET HERS Raters who are qualified to issue Section 45L Certification Reports.

79.     As set forth above, Schultz and WRS intentionally, maliciously, unlawfully and without justification interfered with these contractual and

15

advantageous business relationships by intentionally issuing fraudulent Certification Reports.

80.     Schultz and WRS were aware, or should have been aware of RESNETS business relationships, which is why, on information and belief, Schultz and WRS are intentionally fraudulently deceiving people into believed that Schultz is a certified RESNET HERS Raters.

81.     Schultz and WRS specifically intended to interfere with Plaintiff's business relationships.

82.     The activities of Schultz and WRS, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between Schultz and WRS and RESNET.

83.     Schultz's and WRS's actions may reasonably induce or cause RESNETS business relationships to not continue to conduct business with RESNET.

84.     RESNET has been damaged as a result of Defendants' interference.

## **PRAYER FOR RELIEF**

WHEREFORE, RESNET prays that this Court enter judgment in RESNET's favor on the claims set forth above and award RESNET the following relief:

a.      That this Court adjudge that RESNET's Intellectual Property has been infringed, as a direct and proximate result of the willful acts of Schultz and WRS as

set forth in this Complaint, including Schultz and WRS's use of RESNET's trademarks and copyright, in violation of RESNET's rights under federal and state law.

b.      That this Court adjudge that Schultz and WRS have competed unfairly with RESNET in violation of RESNET's rights under federal and state law.

c.      That this Court adjudge that Schultz and WRS have committed acts in violation of the MGL c 93A.

d.      For damages in an amount to be proven at trial for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114;

e.      An injunction against the Schultz and WRS, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, finding that they be preliminarily and permanently enjoined and restrained:

> 1)      From using the RESNET's Intellectual Property, customer lists, programs or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks similar thereto or likely to be confused therewith, in connection with the distribution,

marketing, advertising or sale of any unauthorized goods and/or services;

2) From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the unauthorized goods and/or services of Schultz and WRS are sponsored by, authorized by, or in any way associated with RESNET;

3) From infringing, contributing to, conspiring to, or inducing the infringement of the RESNET's Intellectual Property;

4) From doing any other act or thing likely to cause the public or the trade to believe that there is any connection between Schultz, WRS and RESNET, or their respective goods, programs or services; and

5) From falsely representing themselves or their affiliates as being connected with RESNET, or sponsored by or associated with RESNET, or engaging in any act which is likely to falsely cause the trade and/or members of the purchasing public to believe that Schultz and WRS or its affiliates are associated with RESNET and/or that RESNET are associated with Schultz or WRS, and that Schultz

and WRS be prohibited from any and all use of RESNET's Intellectual Property; and

6)    Invalidating and/or nullifying any contracts that Schultz and WRS may have signed or disseminated to third parties utilizing the RESNET's Intellectual Property; and

7)    Preventing and prohibiting Schultz and WRS from utilizing the "RESNET" or "HERS" marks, or any derivative thereof.

e.    That Schultz and WRS be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, wrappers, inventory, advertisements, internet advertising and other written or printed material in the possession or control of Schultz and WRS, or third party advertisers, that bear any of RESNET's Intellectual Property or any infringement thereof, and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks similar thereto or likely to be confused therewith, alone or in combination with any other word or element.

f.    That Schultz and WRS be directed to file with this Court and to serve upon RESNET within thirty (30) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs (d) and (e), including all subparts.

g.    That RESNET recover Schultz and WRS's profits and the damages incurred by RESNET, including without limitation damages sufficient for corrective advertising, arising from Schultz and WRS's acts of trademark infringement and

unfair competition, and that the Court, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117, enter judgment, and that said sums be trebled as authorized pursuant to 15 U.S.C. § 1117(b).

h.   That RESNET be entitled to injunctive relief as set forth in § 34 of the Lanham Act, and that RESNET has and recover the remedies set forth in §§ 35(a) and 36 of the Lanham Act, 15 U.S.C. §§ 1117(a) and 1118.

i.   That this case be deemed "exceptional" within the meaning of 15 U.S.C. § 1117, and that RESNET be awarded its reasonable attorneys' fees incurred in this action, pursuant to § 35 of the Lanham Act, 15 U.S.C. §1117.

j.   That RESNET be awarded its reasonable attorneys' fees and costs as set forth in Florida Statutes Chapter 501.

k.   That RESNET recover its taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. § 1117, Fed. R. Civ. P. 54, and/or as otherwise authorized.

l.   That Schultz and WRS be directed to pay over to RESNET pre-judgment interest from the date the infringement began and post-judgment interest at the maximum rate permitted by law.

m.   That RESNET recover such further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

RESNET demands a trial by jury as to all issues triable of right by a jury.

Respectfully submitted this 8th day of September, 2021.

**NELSON MULLINS RILEY
& SCARBOROUGH, LLP**

*Attorneys for RESNET,*
390 North Orange Avenue, Suite 1400
Orlando, Florida  32801
P.O. Box 4961 (32802-4961)
Telephone:   (407) 839-4200
Facsimile:    (407) 650-0927

By:<u>/s/ Nicolette C. Vilmos</u>
Nicolette C. Vilmos
Florida Bar #:  0469051
nicolette.vilmos@nelsonmullins.com

4832-4897-4586